02-09-152-CV















 

 

 

COURT OF
APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00152-CV


 

 


 
 
 Jan Lucas d/b/a Jato Oil and Gas
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Roger L. Coomer, Verna E. Coomer, and Phil King d/b/a King
 and King
 
 
  
 
 
 APPELLEES 
 
 


 

 

----------

 

FROM THE 43rd District Court OF Parker COUNTY

----------

 

MEMORANDUM OPINION[1]

----------

 

I. 
Introduction

This is an appeal from a summary
judgment in an oil and gas case.[2]
Appellees Roger L. Coomer,
Verna E. Coomer, and Phil King d/b/a/ King and King
filed a motion for summary judgment against Appellant Jan Lucas d/b/a Jato Oil and Gas.  In
granting Appellees’ motion for summary judgment, the
trial court ordered Lucas to pay the Coomers a lease
bonus of $176,000 and King a finder=s fee of $16,000.  In
three issues, Lucas argues that the trial court erred by granting summary
judgment because (1) Appellees failed to present
evidence that the lease was accepted by Lucas, (2) Appellees
failed to bring forward evidence that conditions precedent to the effectiveness
of the lease had been satisfied, and (3) an ambiguity in the lease created a genuine
issue of material fact.  We will
affirm.  

II.  Background Facts

 The Coomers own
approximately 160 acres of land in Parker County, Texas.  They asked King to inquire into whether any
production companies would be interested in leasing the mineral rights to their
property.  Robert Palmer, who is not a
party to the present suit, then initiated communication between King and Lucas.
 Palmer told King that Lucas had the
ability to Alease the mineral rights to the Coomers= property.@

Lucas and King then entered into
negotiations to lease the minerals on the Coomers= property.  King negotiated the amount of bonus, royalty
fee, and finder=s fee.  After the terms of the lease had been agreed
upon, King sent Lucas a proposed lease.  Lucas told King that she could not agree to
the inclusion of the bonus amount and finder=s fee in the lease, but she agreed to have those terms
included in a Supplemental Addendum to the lease.  King then prepared a Supplemental Addendum and
sent Lucas the updated lease and Supplemental Addendum.  

The lease contains a provision
stating that A[t]his lease shall be effective as to
each Lessor [the Coomers]
on execution hereof as to his or her interest and shall be binding on those
signing.@  The lease contains signature blocks for the Coomers and for Jato.  Additionally, Exhibit “A,” attached to the
lease, states that A[t]he following provisions shall
supplement the printed provisions of the Lease; and, in the event of any
conflict between the following supplemental provisions and the provisions of
the printed Lease, the supplemental provisions of this Exhibit >A= shall prevail and control.@  The provision upon
which Lucas relies in this appeal is paragraph 20 of Exhibit “A.”  Paragraph 20 reads as follows, 

20.  Acceptance
by Lessee.  Upon acceptance of this
agreement, a representative of the Lessee shall initial each page of the Lease
and of this Addendum and file the original of record in the county records of
Parker County, Texas and provide Lessor=s
Attorney, [King], a certified copy of such lease no later than 4:30 P.M.
November ___, 2007.  Failure to so
provide [sic] then this offer shall be rescinded and the lease offer shall be
ipso facto withdrawn.  Timely filing and
delivery of the lease shall constitute acceptance by the Lessee. Failure to
file and deliver the certified copy of the lease shall be prima facie proof
that the lease was declined by the Lessee.   

 

The date by which Jato
was required to provide King with a certified copy of the lease was left blank.
 Directly below that provision are
“SIGNED FOR IDENTIFICATION” signature blocks for the Coomers
as lessors and for Jato as
lessee.

The Supplemental Addendum to the
lease contains the bonus and finder’s fee provisions.  It states, AUpon execution of this lease, Lessee
shall pay Lessor as a bonus the sum of $1,100.00 per
total mineral acre leased.@  It also provides that ALessee shall pay to [King] the
additional undivided sum of $100.00 [per acre] as a finder=s fee.  By execution of this lease, Lessor consent[s] and . . . agrees to the payment of said
finder=s fee.@  This addendum also
has “SIGNED FOR IDENTIFICATION” signature blocks for the Coomers
as lessors and for Jato as
lessee.

After receiving the updated lease and
Supplemental Addendum, Lucas informed King via email on November 26, 2007 that
she had received the updated lease, had gotten it notarized, and would mail it
back to him that day.[3]
After King did not receive the signed lease, he emailed Lucas requesting
verification that she had mailed the lease because he was “concerned it was
lost in the mail.”  Lucas responded, “I
had it dropped off at your office on 11-27 as we missed the mail on Monday.”

Lucas stated in her deposition that
she was out of town when she received the updated lease and that she had
instructed her son and landman, Phillip Sterling, to
take the lease documents to King=s office.  Lucas could not remember if she had asked
Sterling to sign the lease or if Appellees just had
him sign the lease when he was at King’s office.  She stated that Jason Potts had driven
Sterling to King’s office to drop off the signed lease.

Sterling’s signature, as landman for Jato, appears in the
signature blocks for lessee on the lease, Exhibit “A” to the lease, and the
Supplemental Addendum.  Sterling’s
signature on the lease was notarized by Jason Potts on November 27, 2007.  Sterling did not initial each page of the
lease in accordance with paragraph 20 of Exhibit “A.”  The Coomers’
signatures appear on the signature blocks for lessors
on the lease, Exhibit “A” to the lease, and the Supplemental Addendum.  Their signatures on the lease were notarized
by King’s legal assistant on December 3, 2007. 

King’s legal assistant emailed Lucas
on December 6, 2007, stating that King would record the original lease and
requesting that the bonus check be payable to the Coomers
and the finder’s fee check be payable to King. 
On January 2, 2008, King filed the executed lease, including Exhibit
“A,” in the Official Records of Parker County.

The Coomers
never received their bonus, and King never received his finder’s fee.  On January 22, 2008, Appellees
sent a written demand to Lucas for payment of the Coomers= bonus and King=s finder=s fee.  On May 21,
2008, King=s attorney sent a subsequent written
demand to Lucas for the payment of the bonus and finder=s fee, as well as notice of Appellees= intent to file a lawsuit if the fees
were not paid.

On June 11, 2008, Appellees
filed their original petition.  Appellees then filed their motion for summary judgment
alleging that Lucas had breached the contract and that no genuine issue of
material fact exists as to their breach of contract claim.  In the response to the motion for summary
judgment, Lucas asserted that Appellees provided no
evidence that she had accepted the lease under paragraph 20 of Exhibit “A.”  After a hearing, the trial court granted Appellees= motion for summary judgment, finding
that there was no genuine issue of material fact as to Appellees= breach of contract claim and that
the lease was an enforceable contract.  This
appeal followed.

III. Standard of Review

In a summary judgment case, the issue
on appeal is whether the movant met the summary
judgment burden by establishing that no genuine issue of material fact exists
and that the movant is entitled to judgment as a
matter of law.  Tex. R.
Civ. P. 166a(c); Mann Frankfort Stein & Lipp
Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).  We review a summary judgment de novo.  Mann Frankfort, 289 S.W.3d at 848 (Tex. 2009).

We take as true all evidence
favorable to the nonmovant, and we indulge every
reasonable inference and resolve any doubts in the nonmovant=s favor.  20801, Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008); Sw. Elec.
Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).  We consider the evidence presented in the
light most favorable to the nonmovant, crediting
evidence favorable to the nonmovant if reasonable
jurors could, and disregarding evidence contrary to the nonmovant
unless reasonable jurors could not.  Mann
Frankfort, 289 S.W.3d at 848.  We must consider whether reasonable and
fair-minded jurors could differ in their conclusions in light of all of the
evidence presented.  See
Wal-Mart Stores, Inc. v. Spates, 186 S.W.3d 566, 568 (Tex. 2006); City
of Keller v. Wilson, 168 S.W.3d 802, 822B24 (Tex.
2005).

The summary judgment will be affirmed
only if the record establishes that the movant has
conclusively proved all essential elements of the movant=s cause of action or defense as a
matter of law.  City
of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).

IV.  Summary Judgment Was Proper

Lucas’s three points on appeal center
around paragraph 20 of Exhibit “A” to the lease.  That paragraph provides that “upon
acceptance” of the lease, Lucas, as lessee, shall initial each page of the
lease and Exhibit “A,” file them in the county records of Parker County, and
provide King with a certified copy of the lease by “4:30 P.M. November ___,
2007.”  Paragraph 20 further specifies
that if Lucas fails to provide King with a certified copy of the lease, “then [the]
offer shall be rescinded and the lease offer shall be ipso facto
withdrawn.”  According to paragraph 20,
“[t]imely filing and delivery of the lease shall
constitute acceptance by [Lucas],” and “[f]ailure to
file and deliver the certified copy of the lease shall be prima facie proof
that the lease was declined by the Lessee.” 
We will address each of Lucas’s points separately below.

A.  Lucas’s Acceptance of the Lease

Lucas argues in her first issue that Appellees failed to present evidence that she accepted the
lease in the manner set forth in paragraph 20 of Exhibit “A.” According to
Lucas, she could only accept the lease by (1) initialing each page of the lease
and Exhibit “A,” (2) filing the lease in the Parker County records, and (3)
providing King with a certified copy of the lease.

A valid contract exists when the
following elements are present: (1) an offer, (2) an acceptance in strict
compliance with the terms of the offer, (3) a meeting of the minds, (4) each
party’s consent to the terms, and (5) execution and delivery of the contract
with the intent that it be mutual and binding.  Williams v. Unifund CCR
Partners Assignee of Citibank, 264 S.W.3d 231, 236 (Tex. App.—Houston [1st
Dist.] 2008, no pet.).  Unless
otherwise indicated, an offer may be accepted in any manner reasonable under
the circumstances.  Horton v. DaimlerChrysler
Fin. Servs. Ams., L.L.C., 262
S.W.3d 1, 6 (Tex. App.—Texarkana 2008, no pet.) (citing
Restatement (Second) of Contracts § 30 (1981)). 
But when an offer prescribes the manner of acceptance, its terms in this
respect must be complied with to create a contract.  Town of
Lindsay v. Cooke County Elec. Coop. Ass’n, 502 S.W.2d 117, 118 (Tex. 1973), cert. denied, 416 U.S. 970 (1974).  The use of a different method of acceptance by
the offeree will not be effectual unless the original
offerors thereafter manifests their assent to the
other party.  Id. 

Here, paragraph 20 provides the
manner by which Lucas was to accept the lease: “Timely filing and delivery of
the lease shall constitute acceptance by the lessee.”  Although strict compliance with the manner of
acceptance is generally required to form a binding contract, Lucas accepted the
lease in a different manner—by having Sterling sign the lease documents on
behalf of Jato (without initialing each page) and
deliver the original lease (rather than a certified copy) to King without
filing it.  See id.  And the Coomers
manifested their assent to Lucas’s “different” manner of acceptance by
subsequently signing the documents as lessees, notifying Lucas that they would
file the lease, and filing the lease in the Official Records of Parker
County.  See Padilla v. LaFrance,
907 S.W.2d 454, 460 (Tex. 1995) (holding that offeror’s
letter to offerree indicating a consummated
settlement agreement showed his assent to offeree’s
alteration of the mode of acceptance set out in original offer).  Consequently, the summary judgment evidence
establishes that Lucas accepted the lease.  See Town of Lindsay, 502
S.W.2d at 118.

Taking as true all evidence favorable
to Lucas, as the nonmovant, and indulging every
reasonable inference and resolving any doubts in her favor, we hold that the
summary judgment evidence establishes that she accepted the Commers’
offer, albeit in a different manner than that specified in the lease, agreeing
to be bound by the terms of the lease, and that the Coomers
assented to Lucas’s alternative acceptance of the lease.  See
20801, Inc., 249 S.W.3d at 399; Sw.
Elec. Power Co., 73 S.W.3d at 215; see
also Williams, 264 S.W.3d at 236.  We overrule Lucas’s first issue.

B.  Terms of Acceptance Not
Conditions Precedent

In her second issue, Lucas argues,
alternatively, that the provisions of paragraph 20—requiring her, upon
acceptance, to initial each page of the lease, file it, and give a copy to
King—were conditions precedent to the lease and that Appellees
failed to present evidence that those conditions were satisfied.

A condition precedent is an event
that must happen or an act that must be performed before a right can accrue to
enforce an obligation.  Centex Corp. v. Dalton, 840 S.W.2d
952, 956 (Tex. 1992); Calce v. Dorado
Exploration, Inc., 309 S.W.3d 719, 742 (Tex.
App.—Dallas 2010, no pet.). 
A condition precedent relating to the formation of a contract is a
condition that must be performed before the parties= agreement will become a binding,
enforceable contract or a condition that must be fulfilled before a duty to
perform an existing contract arises.  Hohenberg
Bros. Co. v. George E. Gibbons & Co., 537 S.W.2d 1, 3 (Tex. 1976).  A covenant, as distinguished from a condition
precedent, is an agreement to act or refrain from acting in a certain way.  Landscape Design & Constr., Inc. v. Harold Thomas Excavating, Inc.,
604 S.W.2d 374, 376 (Tex. Civ. App.—Dallas 1980, writ ref’d
n.r.e.).

In order to make performance
specifically conditional, a term such as “if,” “provided that,” “on condition
that,” or some similar phrase of conditional language must normally be included.  Criswell v. European
Crossroads Shopping Ctr., Ltd., 792 S.W.2d 945, 948 (Tex. 1990) (op. on reh’g).  If no
such language is used, the terms will be construed as a covenant in order to
prevent a forfeiture.  Id.; Calce, 309 S.W.3d
at 742.  Although there is no
requirement that such phrases be utilized, their absence is probative of the
parties’ intention that a promise be made, rather than a condition imposed.  Hohenberg Bros. Co., 537 S.W.2d at
3; Gulf Constr. Co. v. Self, 676
S.W.2d 624, 627 (Tex. App.—Corpus Christi 1984, writ ref’d
n.r.e.).  
When the intent of the parties is doubtful or when a condition would
impose an absurd or impossible result, the agreement will not be interpreted as
creating a condition.  Calce, 309 S.W.3d at 742; see
also Criswell, 792 S.W.2d at 948; Hohenberg Bros. Co., 537 S.W.2d at 3.  As forfeitures are not favored, finding a
condition precedent should be avoided if another reasonable reading of the contract
is possible.  Criswell,
792 S.W.2d at 948; Schwarz‑Jordan,
Inc. of Houston v. Delisle Constr. Co., 569
S.W.2d 878, 881 (Tex. 1978).

Paragraph 20’s requirements that
“upon acceptance,” a representative of Jato initial
each page of the lease, record an original in the county records, and deliver a
copy to King are not conditions precedent to the effectiveness of the lease;
rather, they are covenants that Jato was to perform “upon acceptance.”  Landscape
Design & Constr., Inc., 604 S.W.2d at 376.  Paragraph 20 does not contain conditional
language such as “if,” “provided that,” or “on condition that.”  See Criswell,
792 S.W.2d at 948. 
Rather, it sets out actions Jato promised to
take upon acceptance of the terms of the lease. 
To accept Lucas’s contention that initialing each page of the lease,
filing the original in the official records of Parker County, and delivering a
certified copy to King were conditions precedent to the validity of the lease
would lead to an absurd result when the summary judgment evidence shows that
Lucas accepted the terms of the lease documents and that, at Lucas’s direction,
Sterling executed the lease on behalf of Jato and
delivered the executed lease to the Coomers.  See
Hohenberg Bros. Co., 537 S.W.2d
at 3; Calce, 309 S.W.3d
at 742, 747; see also Criswell, 792 S.W.2d at 948 (explaining that
courts must avoid a construction of the contract that would impose a condition
precedent creating a forfeiture if another reasonable reading of the contract
is possible).  The summary judgment
evidence shows that Lucas informed King via email that she had received the
lease, had gotten it notarized, and would mail it to him; that Sterling signed
the lease documents on behalf of Jato, had his
signature notarized, and, at Lucas’s direction, delivered the signed documents
to King’s office; that Lucas informed King via email that she had the executed
lease delivered to his office on November 27, 2007; that King’s legal assistant
informed Lucas via email on December 6, 2007 that King would record the
original lease; and that King filed the executed lease, including Exhibit “A,”
in the Official Records of Parker County. 
To allow Lucas to escape the binding effect of the lease documents would
be absurd under the facts of this case, and it is highly doubtful that the
parties would have intended such a harsh result.  See
Hohenberg Bros. Co., 537 S.W.2d at 3 (explaining
that when the intent of the parties is doubtful or when a condition would
impose an absurd result, an agreement will not be interpreted as creating a
condition).

Taking as true all evidence favorable
to Lucas, as the nonmovant, and indulging every
reasonable inference and resolving any doubts in her favor, we hold that the
summary judgment evidence establishes that paragraph 20 of Exhibit “A” to the
lease does not set forth conditions precedent to the validity of the lease.  See 20801, Inc., 249
S.W.3d at 399; Sw. Elec. Power Co., 73 S.W.3d at 215.  We overrule Lucas’s second issue.

C.  Lease Not Ambiguous

          In
her third issue, Lucas argues that summary judgment was not proper because
paragraph 20 is ambiguous.  

When construing contracts and other
written instruments, our primary concern is to ascertain the true intent of the
parties as expressed in the instrument.  NP Anderson Cotton Exch.,
L.P. v. Potter, 230 S.W.3d 457, 463 (Tex. App.—Fort Worth 2007, no pet.).  Lack of clarity does not create an ambiguity,
and a contract is not ambiguous simply because the parties advance conflicting
interpretations.  Universal Health Servs.,
Inc. v. Renaissance Women’s Group, P.A., 121 S.W.3d 742, 746 (Tex. 2003); Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996).  Rather, the issue of whether a contract is
ambiguous is a question of law that must be decided by examining the contract
as a whole in light of the circumstances present when the contract was entered
into.  Universal Health, 121 S.W.3d at 746.  An ambiguity arises only after the
application of established rules of construction leaves an agreement
susceptible to more than one meaning.  See DeWitt County Elec.
Coop., Inc. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999).  But if the contract can be given a certain or
definite legal meaning, it is not ambiguous and should be construed as a matter
of law.  Grain Dealers Mut. Ins. Co. v. McKee, 943 S.W.2d 455, 458 (Tex. 1997).  “When the [contract] is not ambiguous on its
face, extrinsic evidence may not be used to create an ambiguity.”  Balandran v. Safeco
Ins. Co. of Am., 972 S.W.2d 738, 745 (Tex. 1998); see CenterPoint Energy Houston Elec., L.L.P.
v. Old TJC Co., 177 S.W.3d 425, 431 (Tex. App.—Houston [1st Dist.] 2005,
pet. denied).

In this case, Lucas appears to argue
that an ambiguity exists because paragraph 20’s requirements for her to accept the lease before she has any
obligation to perform under the lease conflicts with the Supplemental Addendum’s
requirement that she pay the bonus and finder’s fee amounts “[u]pon execution” of
the lease. [Emphasis added.]  We see no
ambiguity.  As we explained above, paragraph
20 sets forth the manner in which Lucas was to accept the lease and the actions
she promised to take upon acceptance—initial each page of the lease, file it,
and provide a certified copy to King. 
The Supplemental Addendum sets forth the parties’ agreement that King pay the Coomers a bonus fee and
pay King a finder’s fee in the sums agreed to by the parties.  We refuse to split hairs when, looking at the
contract as a whole, the parties clearly intended that, upon reaching an
agreement and entering into the lease agreement, they be bound by its terms,
including the requirement that Lucas pay the bonus and finder’s fee provided
for in the Supplemental Addendum.  See NP
Anderson Cotton Exch., L.P., 230 S.W.3d at 463.  

Taking as true all evidence favorable
to Lucas, as the nonmovant, and indulging every
reasonable inference and resolving any doubts in her favor, we hold that the
lease is not ambiguous so as to preclude summary judgment.  See 20801, Inc., 249
S.W.3d at 399; Sw. Elec. Power Co., 73 S.W.3d at 215.  We overrule Lucas’s third issue.

V. 
Conclusion

Having overruled Lucas’s three issues
and having determined that Appellees conclusively
proved that Lucas accepted the lease as a matter of law, that the provisions of
paragraph 20 of Exhibit “A” to the lease are not conditions precedent to the
validity of the lease, and that the lease is not ambiguous, and because Lucas
does not challenge summary judgment as to the remaining elements of Appellees’ cause of action, we hold that the trial court
did not err by granting summary judgment for Appellees.  See Tex.
R. App. P. 47.1; City of Houston, 589 S.W.2d at 678.  We affirm the trial court=s judgment.  

 

 

SUE WALKER

                                                                             JUSTICE

 

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and WALKER, JJ.

 

DAUPHINOT,
J. filed a dissenting opinion.

 

DELIVERED:  December 16, 2010

 

 

 

 










 

 

 

COURT OF
APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00152-CV


 

 


 
 
 Jan Lucas d/b/a Jato Oil and Gas
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Roger L. Coomer, Verna E. Coomer, and Phil King d/b/a King
 and King
 
 
  
 
 
 APPELLEES 
 
 


 

 

----------

 

FROM THE 43rd District Court OF Parker COUNTY

----------

 

DISSENTING MEMORANDUM OPINION[4]

----------

          Paragraph 20 of the lease states that
delivery and filing are required for Lucas to accept the lease.  The lease further states that failure to file
the lease is prima facie proof that Lucas did not accept the lease.  Although the lease does not contain terms
such as “if” or “on condition that,” paragraph 20 does specifically state that
Lucas’s failure to perform these conditions would constitute a rejection of the
offer and would result in the offer being rescinded.[5]
Paragraph 20 is therefore a condition precedent to contract formation.[6]  As the parties moving for summary judgment on
their breach of contract claim, the Coomers had the burden of proving that all
conditions precedent had been satisfied.[7] 

The lease does not state that Lucas herself
must file the lease in order to indicate acceptance; it merely requires filing
and is silent as to who must file it and how it must be filed.  This provision makes no sense, however, if
acceptance by Lucas could be
demonstrated by the Coomers recording
the lease.  Because Lucas did not perform
the conditions precedent, it is prima facie evidence that she rejected the
offer expressed in the contract and addendum and, consequently, no contractual
obligation on the part of either Lucas or the Coomers
was ever created.

As the majority notes, despite the language
of paragraph 20, Lucas could have by her actions demonstrated her waiver of the
condition precedent and acceptance of the lease.  Although a contract may set out in its terms
the manner by which the parties indicate acceptance, a different manner of
acceptance will nevertheless be effective if the offeror assents to it.[8]

In the case now before this court, the
summary judgment evidence did not establish as a matter of law that Lucas had
waived the condition precedent and accepted the
contract by filing it or by performance. 
For that matter, the evidence did not establish as a matter of law that
this provision was intended to benefit the Coomers;
if it was not, they could not waive its effectiveness by assenting to a
different method of acceptance.[9]  Only Lucas could agree to waive its effect if
it was intended to benefit her.  Whether
the provision was intended to benefit Lucas, and if so, whether Lucas’s actions
constitute a waiver of the condition precedent and, thus, acceptance of the
lease are questions of fact.  Because a
genuine issue of material fact exists as to whether Lucas accepted the lease, I
respectfully dissent.

 

LEE ANN DAUPHINOT

JUSTICE

 

DELIVERED:  December
16, 2010











          [1]See Tex. R.
App. P. 47.4.





[2]Although this case was submitted on October
1, 2009, it was not assigned to this author until November 2, 2010.





[3]Appellees attached to their motion for summary
judgment emails between Lucas and King.   






[4]See Tex. R.
App. P. 47.4.





[5]See Hohenberg Bros. Co. v.
George E. Gibbons & Co., 537 S.W.2d 1, 3 (Tex. 1976).   





[6]See id. 





[7]See Calce v. Dorado Exploration, Inc.,
309 S.W.3d 719, 732 (Tex. App.—Dallas 2010, no pet.).





[8]See Padilla v. LaFrance, 907 S.W.2d 454,
460 (Tex. 1995); see also Horton v.
DaimlerChrysler Fin. Servs. Ams., L.L.C., 262 S.W.3d 1, 6 (Tex.
App.—Texarkana 2008, no pet.) (noting that “[i]t is well established that acceptance
may be shown by conduct”).





[9]See Joiner v. Elrod, 716 S.W.2d 606, 609
(Tex. App.—Corpus Christi 1986, no writ) (“[A] party can waive [contract]
provisions for his benefit.”
(emphasis added)).